IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JEREMY NATHANIEL KEITH,<br><br>      Plaintiff,<br><br>vs.<br><br>ANAMOSA STATE PENITENTIARY,<br>*et al.*,<br><br>      Defendants. | No. 22-CV-0105-CJW-MAR<br><br>**INITIAL REVIEW ORDER** |

This matter is before the Court on plaintiff Jeremy Nathaniel Keith's amended complaint (Doc. 5) filed under Title 42, United States Code, Section 1983.[1] Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. 4). In his amended complaint, plaintiff asserts Anamosa State Penitentiary staff violated his rights by taking away his access to mail on two occasions for ninety days. After conducting an initial review, the Court will allow plaintiff's claims to proceed and grants plaintiff's motion to proceed in forma pauperis.

## I.    MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff did not submit the statutory filing fee. *See* 28 U.S.C. § 1914(a) (requiring filing fee). In order for a court to authorize the commencement of an action without the

---

[1] Plaintiff initially submitted a handwritten pro se filing (Doc. 1) that the Clerk of Court docketed as a pro se complaint filed under Title 42, United States Code, Section 1983. The Court issued an order on September 26, 2022, granting plaintiff thirty days to either pay the complete filing fee or file a motion to proceed in forma pauperis. (Doc. 2, at 1-2). Because plaintiff's initial handwritten filing was deficient, the Court also gave plaintiff thirty days to file an amended complaint using the standard Section 1983 form. (*Id.,* at 2).

prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2).

Plaintiff, an inmate at Anamosa State Penitentiary, has now submitted documents (Doc. 4) that substantially comply with the requirements set out above. Because it is clear that he does not have the assets necessary to pay the filing fee, his motion to proceed in forma pauperis is granted. Nevertheless, even when the court deems it appropriate to grant a prisoner-plaintiff in forma pauperis status, that plaintiff is required to pay the full $350.00 filing fee by making payments on an installment basis. 28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Plaintiff must pay an initial partial filing fee in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Based on the documents that plaintiff submitted, the Court finds that the initial partial filing fee is $9.67.[2] (Doc. 4). Plaintiff must submit $9.67 by no later than 30 days from the date of this order. If the Court does not receive payment by this deadline, the instant action will

---

[2] The Court calculated average monthly deposits for six months using the banking information document plaintiff provided. Plaintiff did not submit sufficient information to calculate the average monthly account balance over the preceding six months.

2

be dismissed under Federal Rule of Civil Procedure 41(b) (permitting dismissal when a plaintiff either fails to prosecute or fails to respond to an order of the court); *Hutchins v. A.G. Edwards & Sons*, 116 F.3d 1256, 1259–60 (8th Cir. 1997) (explaining a court's power to dismiss an action). If necessary, plaintiff may request in a written motion an extension of time to pay the initial partial filing fee.

In addition to the initial partial filing fee, a prisoner-plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after plaintiff pays in full the initial partial filing fee discussed above, the remaining installments will be collected by the institution having custody of him. The Clerk of Court's Office is directed to send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where plaintiff is an inmate.

## II. INITIAL REVIEW STANDARD

Courts must liberally construe pro se complaints. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Nevertheless, the Court may dismiss an in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief

can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment. 28 U.S.C. § 1915(e)(2).

In reviewing an in forma pauperis complaint, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, still must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). In determining whether a complaint fails to state a claim under Section 1915(e)(2), courts generally rely on the standards articulated under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Section 1915(e)(2), a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *Id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

### III. INITIAL REVIEW ANALYSIS

#### A. Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

4

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. *Initial Review Analysis*

Plaintiff asserts that defendants violated his First Amendment rights by interfering with his "prisoner's rights to use of the mail." (Doc. 5, at 3). He asserts that his access to mail was taken away on two occasions when he was given ninety-day communication restrictions with no incoming or outgoing mail, no email, no phone, and no visits. (*Id.,* at 7). Although plaintiff's amended complaint is not entirely clear, he attaches documents that explain he was given a communication restriction recently as a disciplinary measure after he violated a no-contact order with the mother of his child. (Doc. 5, at 12-15; Doc. 5-1, at 1-2). Plaintiff agrees that he violated a no-contact order but contends it was unintentional because he was not aware of the order. (Doc. 5-1, at 2). He also notes

5

that "I was told about one no contact order that I know about . . . that I got in trouble for in the past for contacting." (*Id.*, at 1). Plaintiff names Anamosa Warden Kris Karberg, Deputy Warden Michelle Waddle, and ALJ Gail Sheridan Lucht, all in individual and official capacities, as defendants. (Doc. 5, at 2-3). Plaintiff asserts the ALJ imposed the restrictions, and the deputy warden and warden affirmed the decision. (*Id.,* at 7). Plaintiff requests monetary damages and the return of his means of communication, including mail. (*Id.,* at 5).

A prisoner retains First Amendment protections to send and receive mail, but that right may be restricted for legitimate penological reasons. *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989); *Turner v. Safley,* 482 U.S. 78, 89 (1987). "Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, [the Supreme] Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world. *Thornburgh*, 490 U.S. at 407–08. The Supreme Court has held that prison officials may limit inmates' outgoing mail if doing so furthers "one or more of the substantial governmental interests of security, order, and rehabilitation" and is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413 (1974), *overruled in part by Thornburg,* 490 U.S. 401 (limiting *Martinez* to outgoing correspondence and holding that regulations affecting the sending of a "publication" to a prisoner must be analyzed under the *Turner* reasonableness standard). The Court, however, left open the question whether prison officials could withhold an inmate's mail as a temporary disciplinary sanction. *Id.*, at 412 n.12 ("We need not and do not address in this case the validity of a temporary prohibition of an inmate's personal correspondence as a disciplinary sanction (usually as part of the regimen of solitary confinement) for violation of prison rules.").

6

Case 1:22-cv-00105-CJW-MAR   Document 6   Filed 11/18/22   Page 6 of 11

The Eighth Circuit, though, has held that temporarily withholding mail from inmates during disciplinary segregation is constitutional under some circumstances. In *Grady v. Wilken*, 735 F.2d 303, 306 (8th Cir. 1984), the Eighth Circuit found that a twenty-day mail hiatus on non-first class mail stemming from disciplinary detention did not impermissibly infringe on an inmate's First Amendment rights or rights to access the courts. When considering a prison policy withholding prisoner's mail that was not religious, personal, or legal mail, the court stated that that deterrence of future misconduct was a substantial governmental interest that justified the policy while the prisoner was confined to disciplinary detention for a period of two months. *Gregory v. Auger,* 768 F.2d 287 (8th Cir. 1985). The court relied in part on the temporary nature of the withholding, stated that "[i]t is important to recognize that the policies were not directed at what an inmate could receive, but when he could receive it," and noted that inmates were not in detention for longer than sixty days. *Id.,* at 290. The court recognized the need of prison officials to "'have available sanctions that impose incremental disadvantages on those already imprisoned.'" *Id*. In *Little v. Norris,* 787 F.2d 1241, 1243–44 (8th Cir. 1986), the Eighth Circuit affirmed summary judgment to defendants and held that a prison policy denying an inmate the right to receive or send personal correspondence during thirty days in punitive segregation did not violate his constitutional rights. The court stated:

> The purpose of withholding personal mail is to make punitive isolation unpleasant, and thereby discourage improper behavior and promote security within the prison. Because the disciplinary sanction serves a valid purpose, and because thirty days is not an excessive length of time, . . . we do not believe the sanction is unconstitutional.

*Id. See also Leonard v. Norris,* 797 F.2d 683 (8th Cir. 1986) (affirming district court's holding that withholding mail for thirty days was constitutional when inmate was given personal incoming mail during 48-hour respite between stacked thirty-day terms). Similarly, the Southern District of Iowa granted summary judgment to

7

defendants and found that withholding of some of inmate's mail for 286 days as a result of 38 separate disciplinary proceedings did not violate her First Amendment rights. *Jackson v. Brookhart*, 640 F. Supp. 241, 242 (S.D. Iowa 1986). Although the total period of detention and corresponding mail restriction was extensive, each individual detention spanned less than thirty days and the relevant disciplinary procedure allowed the inmate to receive religious, legal, and educational materials. The court stated, "the prison policy at issue, as applied to plaintiff over the span of numerous consecutive disciplinary detentions, furthers a substantial governmental interest, and the limitation on the plaintiff's First Amendment freedoms is no greater than is necessary or essential to the governmental interest involved." *Id.,* at 243.

Other courts have reached similar conclusions. *See, e.g., Dupont v. Dubois,* No. 96–1459, 1996 WL 649340, at *1 (1st Cir. Nov. 6, 1996) ("Because the withholding of mail was reasonably related to legitimate penological interests and the restriction on outgoing mail furthered a substantial governmental interest unrelated to the suppression of expression and was no greater than necessary, we find no constitutional violation."); *Barfell v. Weisse*, No. 13-CV-854, 2015 WL 1401865, at *6 (E.D. Wis. Mar. 26, 2015) ("I conclude that the Barfell's First Amendment rights were not violated by the temporary disruption of his right to receive and send mail while he was in segregation. But even if I had concluded otherwise, the Jail defendants would be immune from personal liability because the right to receive and send mail while in disciplinary segregation was not clearly established at the time of their alleged misconduct.").

Here, plaintiff appears to concede that the restrictions were disciplinary measures related to his violation of no-contact orders. Thus, those restrictions would be related to penological interests and content-neutral. At this early stage of these proceedings, without further development of the factual record, though, it cannot be determined that the suppression of outgoing mail was not greater than necessary. Plaintiff appears to allege that all his mail, both incoming and outgoing, is restricted. This would presumably

8

include legal mail, although the Court notes that it received this complaint during an asserted period of plaintiff's restriction. Plaintiff does not state that legal mail is excepted from the restriction, and at this stage of the proceedings, the Court must accept his allegations as true. The extent and potential duration of the communication restrictions are not fully developed. Plaintiff's claims will be allowed to proceed past initial review.

## IV. CONCLUSION

For the reasons stated:

1. Plaintiff's motion to proceed in forma pauperis (Doc. 4) is **granted;**

2. The Clerk of Court will consider the amended complaint (Doc. 5) filed without the prepayment of fees;

3. Plaintiff is ordered to submit an initial partial filing fee of $9.67 by no later than thirty days from the date of this order. If necessary, he may request in a written motion an extension of time to pay the initial partial filing fee. Additionally, after plaintiff pays the initial partial filing fee, the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in Title 28, United States Code, Section 1915(b)(2). Until the $350.00 filing fee is paid in full, plaintiff must pay and the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in Section 1915(b)(2). Until the $350.00 filing fee is paid in full, plaintiff must pay and the institution having custody of him must forward 20 percent of the preceding month's income credited to his account each time the amount in the account exceeds $10.00;

4. The Clerk of Court is directed to send a copy of this order and the notice of collection of the filing fees to the appropriate official at the facility where plaintiff is an inmate;

5. After an initial review, plaintiff's claims in the amended complaint (Doc. 5) will be allowed to proceed;

6. The Clerk of Court is directed to serve, via certified mail, the amended complaint (Doc. 5), along with a copy of this order and the waiver of service of summons form,[3] on the defendants in care of the Anamosa State Penitentiary. The Clerk of Court is also directed to send a copy of this order, along with the complaint, to the Jones County Attorney's Office.

**IT IS SO ORDERED** this 18th day of November, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[3] The Clerk of Court may send one packet to the Anamosa State Penitentiary including the documents for each defendant.

TO: **WARDEN/ADMINISTRATOR**
**Anamosa State Penitentiary, Anamosa, Iowa**

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Jeremy Nathaniel Keith, an inmate at your facility, filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Keith v. Anamosa State Penitentiary, et al.*, Case No. 22-CV-0105-CJW-MAR. The inmate was granted in forma pauperis status under Title 28, United States Code, Section 1915(b), which requires partial payments of the $350.00 filing fee. Based on the inmate's statements, the court has assessed an initial partial filing fee of $9.67, which the inmate must pay now to the Clerk of Court. *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after the inmate pays the initial partial filing fee of $9.67, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed. If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him. Any institution having custody of the above-named inmate shall collect and remit the filing fees as set forth above.

*K Jorgensen* Deputy Clerk

Paul De Young
U.S. District Court Clerk
Northern District of Iowa